COLON FULTON, PLAINTIFF IN ERROR, v. GRIEB RUBBER
COMPANY, DEFENDANT IN ERROR.

Argued June 19, 1907—Decided November 18, 1907.

1. The duty of a master to use reasonable care to discover defects in his plant and appliances may or may not in a given case involve the specific duty of inspection, which being a concrete exercise of reasonable care connotes the exercise of such a degree of foresight as would anticipate all the ordinary occurrences and their probable results that a reasonably prudent man under like circumstances would foresee.
2. If the occurrence by which a servant is injured was beyond the reasonably probable consequences of the ordinary occurrences that reasonably prudent men would under the circumstances have foreseen, the master is not liable because of his omission to make an inspection which extraordinary prevision alone would have dictated.
3. The omission of a master to inspect the hanging wire by which a current of one hundred and ten volts was fed to an electric light bulb was consistent with his exercise of reasonable care for the safety of his servants, although a servant was injured by reason of the wire being blown so constantly by the wind against an iron

pipe four feet away that the insulation of the wire was worn off and the electric current transmitted to the pipe, and thence to a machine on which the plaintiff's hand was resting, and thence to plaintiff's body, causing a tingling sensation or shock that resulted in the plaintiff's hands becoming engaged in the rolls that formed part of the machine.

On error to the Supreme Court.

For the plaintiff in error, *Linton Satterthwait* and *Martin P. Devlin.*

For the defendant in error, *Edwin Robert Walker* and *Scott Scammell.*

The opinion of the court was delivered by

GARRISON, J. This writ of error brings up a judgment of the Supreme Court entered upon a verdict for defendant directed at the trial. The plaintiff in error, who was also the plaintiff in the action below, was an employe of the defendant, and while feeding rubber into one of the defendant's mills had both his hands injured by their being drawn into the rolls that constituted a part of the machine. Just before this happened the plaintiff was resting his right hand against the shoulder of the mill, and was about to remove with his left hand a piece of gum from the rolls, when he felt a jar or shock, and his right hand went in between the rolls. In his endeavors to extricate this hand he placed the other against the rolls, and that hand also was drawn in and injured. A sixteen candle-power incandescent electric light bulb, suspended from the ceiling by an insulated wire, hung about four feet above the rolls and about the same distance from two galvanized iron pipes that ran perpendicularly from the floor to the ceiling at one end of the mill. The plaintiff's case is that the insulation had at a certain point been worn off the electric light wire by constant friction with the iron pipes, against which it had been blown by the wind, and that at the time of the accident this exposed place on the wire came in contact with the iron pipes and transmitted the electric cur-

rent to them and thence to the mill, against which the plaintiff's right hand was resting, producing thereby the jar or shock testified to by the plaintiff, and that in consequence the plaintiff got his hand between the rolls of the mill. At the close of the trial (which was the fourth trial of this cause) the learned trial justice who presided directed a verdict for the defendant, upon the grounds that had been raised at the last trial of the cause, and presumably for the reasons given in the opinion of the Supreme Court upon the rule to show cause why the verdict in that case should not be set aside. In his argument for the reversal of the judgment based upon this judicial ruling, counsel discussed but a single question, which is thus stated in his brief: "The writ of error brings before the Court of Errors and Appeals the single question of the correctness of the ruling of the Supreme Court to the effect that as a matter of law to be determined by the court the exercise of reasonable care did not require the defendant in this case, between the date of its installation and the time of the plaintiff's injury, to inspect the electric light wire on which an electric light bulb was suspended from the ceiling above the mill at which the plaintiff was working, free to move when swayed by the breeze or other cause, and liable, as the evidence shows, to come into contact with the steam pipes, so that the insulation might become worn off."

From the argument that follows it is apparent that the question thus selected for discussion was taken from a still earlier opinion delivered in the Supreme Court upon the rule to show cause why the first verdict obtained in this case should not be set aside. When the second rule to show cause was before the Supreme Court the opinion then delivered stated that the decision pronounced upon the first rule was the law of the case, and should have been followed upon the retrial of the cause. The opinion (43 *Vroom* 35), however, did more than this. It pointed out that, in addition to the rule as to the frequency of inspection laid down by the court in its first opinion, the court had also decided that there was nothing in the case to justify the conclusion that the defendant, in the exercise of a reasonable prudence, should have

anticipated the probability of the electric wire becoming injured in the manner testified to. The later opinion then went on to say: "Reasonable prevision, it was held, would not have foreseen that the cord would be blown by the wind so as to come in contact with an object four feet away, still less that the cord would so constantly come into such contact as to wear off its insulation without breaking the lamp or giving any other indication by which so extraordinary a condition would be brought to the attention of the master or its representatives. * * * The extraordinary occurrence at the time the plaintiff received his injury is established by the second verdict of the jury in his favor, but the degree of foresight that would have anticipated such extraordinary occurrence remains the same as upon the former rule, namely, a degree of foresight that was not required of the defendant, whose duty was to exercise reasonable prudence, and in this sense that which is beyond what is ordinary is beyond what is reasonable." The direction of a verdict that appears by the bill of exceptions now before us was presumably ordered in conformity with the legal rules thus announced, and should, in my judgment, be affirmed upon the grounds indicated by the foregoing excerpt from the opinion of the Supreme Court.

The facts as to the occurrence by which the plaintiff in error received his injuries are the same upon this writ of error as the jury then found them, but the rule of law as to the sort of care a master must exercise in safeguarding his servants is as the Supreme Court then announced it, namely, he must use reasonable care to discover defects in his plant and appliances by reason of which otherwise his servants may be injured.

Upon these facts two questions arise as to the master's duty —*first,* whether it was his duty to inspect the electric light wire, the neglect of which duty occasioned the servant's injury, and *second,* whether, assuming such duty to exist, the master had properly performed it. Inasmuch as there had been no inspection, the case would seem to turn wholly upon the first question, and that in turn depends upon whether the master ought, in the exercise of reasonable care, to have foreseen that his failure to inspect the electric light wire might

lead to its becoming a source of danger to his servants. The question throughout is one of reasonable care, for reasonable foresight is but a form of exercising reasonable care, and inspection is but a concrete exercise of reasonable foresight. Hence the question is whether reasonable foresight would have led the defendant to anticipate that his failure to inspect the electric light wire might result in exposing his servants to the danger of personal injuries—that is to say, whether the omission to inspect the electric light wire was consistent with the due exercise by the defendant of such a degree of foresight as would anticipate all of the ordinary occurrences and their reasonably probable results that a reasonably prudent man under the circumstances would foresee. Beyond this the rule of due care imposed no duty upon the defendant, and under that rule, if the occurrence by which the plaintiff was injured was beyond the reasonably probable result of the ordinary occurrences that reasonably prudent men would have foreseen, the defendant was not obliged to foresee it, and is not liable for its failure to institute an inspection that extraordinary prevision alone would have dictated.

We are brought therefore to the consideration of the question whether the occurrence by which the plaintiff was injured was in this sense extraordinary. The current carried by the electric light wire, as is fully demonstrated in the testimony, would of its own force or intensity injure no one. It would cause a tingling sensation, or, as the plaintiff expressed it, a jar or shock. The plaintiff was injured, not directly by this shock or current, but indirectly by what he was thereby led to do or to forget to do—that is, he was resting his hand on the mill, and the shock in some way caused him to get his hand between the rolls. The electric current, in order to reach the plaintiff's hand, had to be communicated to the mill, and in order to reach the mill it had to be communicated to an iron pipe, and in order to reach this pipe a point of contact was necessary between such pipe and an exposed surface upon the wire that carried the current to the electric bulb, which would occur only in case the insulation was worn off, a process that required much friction and not a little time. Inasmuch as

the lamp bulb hung fully four feet from the pipe, this space must have been constantly traversed by the wire before the friction necessary to wear the insulation off would have occurred. This process was brought about by. the wire being repeatedly blown in that direction by the wind, which also at the time of the accident blew the wire against the pipe so that the exposed surface of the wire contacted the metallic surface of the pipe. Such are the facts of the occurrence with respect to the extraordinary character of which we are led to inquire. I think it is not putting the matter too strongly to say that under the testimony the plaintiff's injury in the foregoing fashion was the result not only of an extraordinary occurrence, but was the culmination of a series of extraordinary occurrences. That an electric light wire should be blown by the wind in an almost horizontal direction so as to come into frictional contact with an iron pipe some four feet away is of itself a somewhat extraordinary occurrence; that this should happen so constantly as to wear the insulation off the wire is, of course, still more extraordinary, while the fact that the fragile bulb at the end of the wire never once came in contact with the iron pipe during all this period is very extraordinary, while if it did come into such contact, of which there is no evidence, and did not break, that is still more extraordinary.

We note the extraordinary character of this chain of circumstances not for the purpose of throwing doubt upon the fact of their occurrence, but for the purpose of determining whether the occurrences themselves were of such an ordinary and reasonably foreseeable nature that the master should, in the exercise of ordinary care, have foreseen them and have guarded against them by inspection, or whether they were of such an extraordinary nature that they were not included within the master's duty, which was to exercise reasonable prevision.

The conclusion to which we have come, and which the Supreme Court reached whenever the matter was before it, is that the occurrence in question was an extraordinary one, so much so that it is not too strong an expression to describe it as being barely possible. The master's duty, however, was to

foresee and guard by inspection against occurrences that were reasonably probable, and to say that an occurrence that is barely possible is one that is reasonably probable is to lose all sense of the meaning of ordinary English words. Without dwelling upon the other remarkable features of the accident by which the plaintiff got his hand between the rolls of the mill, enough has, I think, been said to justify the conclusion reached by the Supreme Court on each occasion, and which the trial justice properly applied by the direction of the verdict for the defendant that appears upon the present record.

While this conclusion disposes of this writ of error, and results in affirming the judgment of the Supreme Court, it is deemed best to point out specifically that the part played by the electric current in the production of the plaintiff's injury does not, either upon the facts or upon principle, bring the case within the rule respecting the high degree of care required in the use of a deadly or dangerous current of electricity. By the undisputed testimony the effect produced on the human body by an electric light current of one hundred and ten volts is trifling and in itself entirely non-injurious. One witness said: "I took hold of the bare ends of two one-hundred-and-ten-volt wires and I could feel a tingling sensation up that far," indicating on his arm. This description does not differ materially from the plaintiff's own account of his accident. The plaintiff therefore was not directly injured by the intensity of the electrical current which was transmitted to his hand, but by its indirect effect upon his behavior and presence of mind. The case therefore does not involve injuries resulting from the direct physical effect of a dangerous agency, but indirect effects that are largely psychological, the physical element, though present, being of itself non-injurious. The matter is thus specifically mentioned to guard against the error of supposing that by our present decision we are in any way subtracting from the rule with respect to agencies that are, unless properly watched, dangerous *per se*.

It should further be said, in order to dispose of all the points raised, that the testimony produced at the trial to the effect that here and there a manufacturer made an inspection

of his electric light wires fell short of showing any general custom in this respect, and is entirely consistent with the idea that these few manufacturers were exceptionally careful of their property, for it nowhere appears that such inspection was not for the purpose of preventing short circuits that would cause trouble by the burning out of fuses, or for the prevention of fire by which the property of the owner might be injured or destroyed. Nowhere in the case is it even suggested that such inspections were requisite to the safety of employes, or that they were in fact made for that purpose. The evidence in question is wholly insufficient to overcome the rule of law that we have discussed, and does not materially vary the issues of law or fact upon which the earlier decisions of the Supreme Court were based.

Finding no error in the judicial ruling by which a verdict for the defendant was directed, the judgment of the Supreme Court is affirmed.

*For affirmance*—MAGIE, CHANCELLOR, THE CHIEF JUSTICE, GARRISON, HENDRICKSON, PITNEY, SWAYZE, TRENCHARD, BOGERT, VREDENBURGH, GREEN, GRAY, DILL, J.J. 12.

*For reversal*—None.